IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 18, 2018

## STATE OF TENNESSEE v. GREGORY EIDSON

**Appeal from the Circuit Court for Robertson County**
**No. 74CC2-2016-CR-275  William R. Goodman, III, Judge**

_____

### No. M2017-01808-CCA-R3-CD

_____

The Defendant, Gregory Eidson, was convicted by a jury of driving under the influence ("DUI") and received a sentence of eleven months and twenty-nine days.  On appeal, the Defendant argues that (1) the trial court committed reversible error by failing to appoint a court reporter; (2) he and his counsel were improperly excluded from the grand jury proceedings; (3) counsel was ineffective at the preliminary hearing; (4) the trial court erred in denying his motion to suppress statements made to an officer before being read his *Miranda* warnings; (5) the trial court erred in admitting the results of his blood test; (6) the trial court was biased, failed to correct prosecutorial misconduct, and denied the Defendant his right to a speedy trial; and (7) the trial court erred in dismissing his petition for writ of habeas corpus in a separate case.  After a review of the record and applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory Eidson, Wartburg, Tennessee, Pro Se (on appeal); Benjamin K. Dean, Springfield, Tennessee (at trial), for the appellant, Gregory Eidson.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant was indicted for DUI, DUI per se, driving without a seatbelt, and driving without insurance. The charges of driving without a seatbelt and driving without insurance were dismissed. Following a jury trial, the Defendant was found guilty of both DUI and DUI per se, and the trial court merged the counts into one conviction.

The Defendant did not hire a court reporter but filed a statement of the evidence in the trial court. *See* Tenn. R. App. P. 24(c). The State objected, and the trial court filed an approved statement of the evidence, *see* Tenn. R. App. P. 24(c), (e), which we summarize below.

Mr. Wesley McWilliams testified that on August 9, 2015, he and his friends were driving on Highway 31W when they noticed a car that had crashed into a ditch. They got out of their vehicle and approached the Defendant, who exited the driver's side of the car. The Defendant asked Mr. McWilliams to call for a tow truck but requested that he not call the police. Mr. McWilliams believed "things did not seem right," so he called law enforcement. He did not observe the Defendant drinking any alcoholic beverages at the scene, nor did he observe any alcoholic beverage containers at the scene.

Tennessee State Trooper Jason Flatt testified that he responded to the scene of the accident. He spoke first with Mr. McWilliams and his friends and then with the Defendant. Trooper Flatt asked what happened, and the Defendant responded that he had been driving when his female passenger got angry with him and grabbed the steering wheel, causing the car to go into the ditch. Trooper Flatt smelled alcohol on the Defendant and noticed "other signs of possible intoxication." He asked the Defendant to perform field sobriety tests and, based on the Defendant's performance, concluded that the Defendant was intoxicated. The Defendant told Trooper Flatt he had consumed a twelve-pack of beer that day. Trooper Flatt arrested the Defendant for DUI, and the Defendant consented to a blood test.

Trooper Flatt testified that he did not observe the Defendant drinking alcohol at the scene of the wreck, nor did he observe any alcoholic beverage containers at the scene. He stated that the Defendant did not tell him that the Defendant had consumed alcohol after he wrecked. He acknowledged that he did not see the Defendant driving the car prior to the wreck, nor did he know how long the car was in the ditch prior to his arrival.

Special Agent April Hager, a forensic scientist with the Tennessee Bureau of Investigation ("TBI"), testified that the Defendant's blood collected after the wreck had a blood alcohol concentration ("BAC") of 0.171.

The Defendant testified that he worked on the day of the accident and had consumed "at most four regular size beers" throughout the day. He explained that he had exaggerated when he told Trooper Flatt he had consumed twelve beers. He maintained that he was driving the car that evening when his passenger grabbed the steering wheel and caused the car to veer into the ditch. He said he was in such a state of shock from the wreck that he "grabbed some 'tall boys' (beer) and drank them quickly." He hid the empty cans in the woods near the ditch. He believed that drinking these beers after the wreck occurred caused his BAC to be above the legal limit.

The statement of the evidence approved by the trial court stated that portions of a video and audio recording from Trooper Flatt's patrol car were introduced into evidence. These portions show Mr. McWilliams and his friends indicating to Trooper Flatt that the Defendant was the driver of the car in the ditch. Trooper Flatt approached the Defendant and asked him to step out of the ditch and onto the shoulder of the road, and the Defendant complied. Trooper Flatt asked the Defendant what happened, and the Defendant explained that his passenger "yanked the wheel and jerked it toward the ditch." Trooper Flatt requested the Defendant's license. After looking at the Defendant's license, Trooper Flatt asked him to sit on the edge of the shoulder of the road while Trooper Flatt spoke to the passenger, who was still inside the car. Trooper Flatt returned to the Defendant, and the Defendant again explained that the passenger "got mad and grabbed the wheel." Trooper Flatt asked the Defendant to "step up here with me for a minute" and indicated for the Defendant to stand in front of the patrol car. The Defendant complied. Trooper Flatt spoke with Mr. McWilliams and his friends and returned to the Defendant. Trooper Flatt asked the Defendant how much alcohol he had consumed, and the Defendant responded he had consumed a twelve-pack of beer. Trooper Flatt asked how the passenger had become impaired, and the Defendant said he did not know. The Defendant consented to performing field sobriety tests.[1]

The jury convicted the Defendant of both DUI and DUI per se, and the trial court merged the counts into one conviction. The Defendant was sentenced to eleven months and twenty-nine days, suspended after ten days of incarceration. This sentence was to

---

[1] The statement of the evidence indicated that the jury viewed the portion of the video where the Defendant performed the field sobriety tests; however, our review shows that the time segments listed as being shown to the jury in the statement of the evidence do not include the Defendant's performance of the tests.

run consecutively to his sentences from a prior case. The Defendant filed pro se motions for a judgment of acquittal and for a new trial. He also filed a pro se petition for writ of habeas corpus regarding his sentences from a separate case. The trial court denied all of the Defendant's motions and dismissed the habeas corpus petition, and the Defendant now timely appeals.

## ANALYSIS

The Defendant argues that: (1) he is denied effective appellate review by the trial court's failure to appoint a court reporter; (2) he and his counsel were improperly excluded from the grand jury proceedings, during which illegal evidence was presented; (3) counsel at his preliminary hearing was ineffective due to a conflict of interest; (4) the trial court erred in denying his motion to suppress statements made to an officer before being advised of his rights; (5) the trial court erred in admitting the results of his blood test when the blood sample was destroyed before he could have it independently tested and in light of this court's recent decision in *State v. Rosemary L. Decosimo*, No. E2017-00696-CCA-R3-CD, 2018 WL 733218 (Tenn. Crim. App. Feb. 6, 2018), *reversed by* 2018 WL 4022338 (Tenn. Aug. 23, 2018); (6) the trial court was biased, allowed prosecutorial misconduct, and denied the Defendant the right to a speedy trial; and (7) the trial court improperly dismissed his petition for writ of habeas corpus in a separate case.

## I. Failure to Appoint a Court Reporter

The Defendant asserts he is denied effective appellate review due to the trial court's failure to have a court reporter present during the trial and post-trial proceedings. The State responds that the Defendant failed to show he was indigent prior to trial, or alternatively, that any deficiency was remedied by the trial court's approval of the statement of the evidence.

Generally, a defendant tried for a misdemeanor offense is not automatically provided with a court reporter at the State's expense. *See* T.C.A. §§ 40-14-307(a) (providing that a court reporter "shall attend every stage of each criminal case before the court"); 40-14-301(3) (defining "criminal case" in pertinent part as "the trial of any criminal offense which is punishable by confinement in the state penitentiary"). Although the Defendant was tried for misdemeanor offenses, *see* Tennessee Code Annotated sections 55-10-401 and 402(a)(1)(A), the record on appeal shows that the Defendant was declared indigent and appointed counsel approximately nine months before his trial. The Defendant maintains that because he was indigent, he was entitled to a court reporter at trial and during the post-trial proceedings. *See State v. Nail*, 963 S.W.2d 761, 764 (Tenn. Crim. App. 1997) (stating that "a court reporter [is] not provided at state expense for a misdemeanor unless a defendant [is] unable to afford one based

- 4 -

upon indigency"). He further maintains that the due to the absence of a court reporter, a complete verbatim transcript could not be prepared, and the reporter's absence precludes effective appellate review of his claims.

As a matter of equal protection, indigent defendants must be afforded with "the basic tools of an adequate defense or appeal, when such tools are available for a price to other defendants." *State v. Gallagher*, 738 S.W.2d 624, 625 (Tenn. 1987) (citing *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *State v. Elliott*, 524 S.W.2d 473, 475 (Tenn. 1975)). The distinction between felony and misdemeanor cases "is not a valid constitutional basis for denial of such tools." *Id.* (citing *Mayer v. City of Chicago*, 404 U.S. 189, 195-96 (1971)). The State must provide an indigent defendant with a "'record of sufficient completeness' to permit proper consideration of [his] claims." *Draper v. Washington*, 372 U.S. 487, 499 (1963) (quoting *Coppedge v. United States*, 369 U.S. 438, 446 (1962)). "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer*, 404 U.S. at 194; *see Gallagher*, 738 S.W.2d at 625. Rather, "alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." *Draper*, 372 U.S. at 495; *see Gallagher*, 738 S.W.2d at 625.

Tennessee Rule of Appellate Procedure 24(c) provides for the filing of a statement of the evidence when a transcript of the evidence is unavailable. In such situations, "the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." Tenn. R. App. P. 24(c). "The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *Id*. An appellee may object to the statement as filed, and any differences regarding the accuracy of the statement shall be settled by the trial court. Tenn. R. App. P. 24(c), (e). "Absent extraordinary circumstances, the determination of the trial court is conclusive." Tenn. R. App. P. 24(e).

The Defendant filed a statement of the evidence, which included a few sentences describing some of the trial testimony but primarily consisted of blanket assertions that the trial court erred in various respects. The State objected and filed a separate statement. The trial court subsequently approved its own statement, which was largely consistent with that filed by the State. In light of the trial court's compliance with the procedure mandated by Rule 24, we conclude that the statement of the evidence approved by the trial court constitutes "an equivalent report of the events at trial from which the appellant's contentions arise." *Mayer*, 404 U.S. at 194. The Defendant had the opportunity to provide a summary of the proceedings below but instead filed a document containing legal arguments. Accordingly, the Defendant is not entitled to relief regarding this issue.

## II. Grand Jury Proceedings

The Defendant argues that his case was presented to a grand jury without the Defendant or his counsel present "to prevent the State from presenting illegal evidence" in violation of the Fifth, Sixth, and Fourteenth amendments to the United States Constitution. The Defendant failed to cite to the record or any authority in his brief to support his claim. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Moreover, the Defendant failed to raise this issue in either his initial or amended motion for a new trial. *See* Tenn. R. App. P. 3(e) (providing that issues not specifically stated in a motion for new trial are waived). Accordingly, this issue is waived.

## III. Ineffective Assistance of Preliminary Hearing Counsel

The Defendant argues that counsel at his preliminary hearing had a conflict of interest, which he asserts constituted ineffective assistance of counsel. However, in his brief, the Defendant does not identify any conflicts of interest that he maintains existed, and the only reference the Defendant makes to the record is to a court order appointing a different attorney, who was neither trial counsel nor the attorney the Defendant maintains represented him at the preliminary hearing. No other citation to authority or reference to the record is included. Therefore, this issue is waived. *See* Tenn. Ct. Crim. App. R. 10(b).

## IV. Motion to Suppress

The Defendant argues that the trial court erred in denying his motion to suppress statements made to Trooper Flatt because he was in custody when he made the statements and had not been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Under the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused may not be compelled to incriminate himself. These protections are "concerned with the inherently coercive atmosphere that accompanies interrogation (or its functional equivalent) by the police." *State v. Sanders*, 452 S.W.3d 300, 311 (Tenn. 2014). When a defendant is subjected to custodial interrogation, law enforcement must inform the defendant of his constitutional rights, including that he has the right to remain silent, that his statement may be used against him, that he has the right to the assistance of an attorney, and that he will be appointed an attorney if he cannot afford one. *Miranda*, 384 U.S. at 478-79. The suspect must have the opportunity to either assert these rights or to knowingly and intelligently waive them. *Id.* at 479. "'But unless and until such warnings and waiver are demonstrated by the prosecution at trial,' statements given during custodial interrogation are not admissible in

the prosecution's case-in-chief." *State v. Climer*, 400 S.W.3d 537, 557 (Tenn. 2013) (quoting *Miranda*, 384 U.S. at 479). Even statements that are voluntarily made will be excluded if they are the result of custodial interrogation without adequate warnings. *State v. Payne*, 149 S.W.3d 20, 32 (Tenn. 2004). "To constitute a 'custodial interrogation,' (1) the subject must be 'in custody'; (2) there must be an interrogation; and (3) the interrogation must be conducted by a state agent." *State v. Smith*, 933 S.W.2d 450, 453 (Tenn. 1996) (quoting *Miranda*, 384 U.S. at 444). "As the *Miranda* Court emphasized, however, these warnings are not required in the absence of custodial interrogation." *State v. Northern*, 262 S.W.3d 741, 749 (Tenn. 2008).

The Defendant filed a pretrial motion to suppress his statements made to Trooper Flatt. The trial court filed a written order granting the Defendant's motion with respect to his statement that he had consumed twelve beers and denying the motion with respect to his statement that he had been drinking alcohol all day. The statement of the evidence, inconsistently with the written order, states that the trial court denied the motion, holding that the Defendant was not in custody when Trooper Flatt approached the wreck and inquired of the Defendant what happened. The statement likewise indicates that the evidence regarding the twelve beers was put before the jury while the evidence regarding drinking alcohol all day was not.

The statement of evidence does not describe what testimony or evidence, if any, was presented during the hearing on the motion to suppress. Neither does it indicate the basis upon which the Defendant's statement about consuming twelve beers was initially suppressed and later admitted at trial. In his proposed statement of the evidence, the Defendant never sought to include any testimony taken during the suppression hearing, the trial court's findings regarding suppression, or any explanation regarding the admission of the evidence that had previously been suppressed. The appellant has the duty to prepare a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In the absence of such a record, we presume that the trial court's judgments were correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Here, we are unable to review the trial court's decisions regarding the suppression of the evidence without knowing what evidence was introduced on the issue or the trial court's reasoning regarding suppression. *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005) ("What is in the record sets the boundaries for what the appellate courts may review, and thus only evidence contained therein can be considered."). Accordingly, the Defendant is not entitled to relief regarding this issue. *See generally* State v. Ramey Michelle Long, No. W2016-02471-CCA-R3-CD, 2018 WL 3203124, at *9 (Tenn. Crim. App. June 29, 2018) (citing cases for the proposition "that when a person is detained temporarily for a traffic stop, even when the stop is to investigate a driver's intoxication, the person is not 'in custody' for the purposes of *Miranda*").

## V. Blood Test

The Defendant argues that he was denied his right to have an independent analysis performed on his blood sample because the TBI destroyed it prior to his preliminary hearing. He also asserts that the results of his blood test should have been suppressed under this court's opinion in *State v. Rosemary L. Decosimo*, 2018 WL 733218, at *1.

### 1. Destruction of Blood Evidence

The Defendant asserts that the TBI's destruction of his blood test kit prior to his preliminary hearing denied him his right to have an independent analysis of the blood test performed. The Defendant filed a pro se pretrial motion to suppress the results from his blood test, which was denied by the trial court. In his motion, the Defendant merely challenged the chain of custody of the blood sample, and he did not mention the destruction of the sample. The Defendant contends that Special Agent Hager testified at trial regarding the destruction of the blood sample. However, the trial court's approved statement of the evidence does not include such testimony and explicitly notes that the Defendant failed to raise this issue in either a pretrial motion or at trial. Consequently, this issue is waived on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); Tenn. R. App. P. 24(b); *State v. Bledsoe*, 226 S.W.3d 349, 357 (Tenn. 2007).

### 2. *State v. Decosimo*

The Defendant argues that the results of his blood test should have been suppressed in light of this court's recent decision in *Rosemary L. Decosimo*, 2018 WL 733218, at *1, which held unconstitutional a statute that imposed a fee upon defendants convicted of certain drug and alcohol offenses when TBI forensic scientists conducted chemical tests to determine blood alcohol or drug content. However, the Tennessee Supreme Court has since reversed this court's holding. *See State v. Decosimo*, No. E2017-00696-SC-R11-CD, __ S.W.3d __, 2018 WL 4022338, at *1 (Tenn. Aug. 23, 2018). Accordingly, the Defendant is not entitled to relief regarding this issue.

### VI. Bias, Prosecutorial Misconduct, and Right to a Speedy Trial

The Defendant argues that the trial court "was biased," improperly denied his right to a speedy trial, and "allowed prosecutorial misconduct to go uncorrected." Regarding the assertion that the trial court was biased, the Defendant provides no citation to authority, no reference to the record, and no explanation as to how the trial court was biased. The Defendant also fails to identify any occurrence of prosecutorial misconduct

in the record. These issues are accordingly waived. *See* Tenn. Ct. Crim. App. R. 10(b). Moreover, the Defendant has waived his claims of a speedy trial violation due to his failure to raise the issue in either his initial or amended motion for a new trial. *See* Tenn. R. App. P. 3(e).

### VII. Petition for Writ of Habeas Corpus

The Defendant argues that the trial court erred in dismissing his petition for writ of habeas corpus regarding his prior convictions for aggravated assault and attempted second degree murder. In 2012, the Defendant pled guilty to aggravated assault and attempted second degree murder in Sumner County. *Gregory Eidson v. State*, No. M2015-01657-CCA-R3-HC, 2016 WL 4252360, at *1 (Tenn. Crim. App. Aug. 10, 2016), *perm. app. denied* (Tenn. Jan. 19, 2017). He received consecutive sentences of three and eight years, respectively and was ordered to serve his sentences on Community Corrections, which was revoked in 2014. *Id.*

Following his trial for the DUI in this case, the Defendant filed a pro se petition for writ of habeas corpus to the Robertson County Circuit Court. In his petition, the Defendant alleged his convictions in Sumner County were void because "the trial court did not have jurisdiction to sentence a 'violent offender charged with a violent criminal offense' to Community Corrections." The trial court denied the petition for lack of jurisdiction.

Article I, section 15 of the Tennessee Constitution provides that "the privilege of the writ of Habeas Corpus shall not be suspended, unless when in case of rebellion or invasion, the General Assembly shall declare the public safety requires it." Habeas corpus relief may be sought by "[a]ny person imprisoned or restrained of liberty … to inquire into the cause of such imprisonment and restraint." T.C.A. § 29-21-101(a). The right to relief is available "only when 'it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." *Summers v. State*, 212 S.W.3d 251, 255 (Tenn. 2007) (quoting *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993)). We review the grant or denial of habeas corpus relief de novo with no presumption of correctness given to the findings and conclusions of the trial court. *Id.* at 255.

While the statutory language "appears broad, in fact, '[h]abeas corpus under Tennessee law has always been, and remains, a very narrow procedure.'" *Edwards v. State*, 269 S.W.3d 915, 919 (Tenn. 2008) (quoting *Archer*, 851 S.W.2d at 162). A habeas corpus petition is used to challenge void and not merely voidable judgments. *Summers*, 212 S.W.3d. at 255-56. "A void judgment is one in which the judgment is facially

invalid because the court lacked jurisdiction or authority to render the judgment." *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999); *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998). A petitioner bears the burden of proving a void judgment or illegal confinement by a preponderance of the evidence. *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). The habeas corpus court has authority to dismiss a petition when the petition shows the petitioner "would not be entitled to any relief." T.C.A. § 29-21-109. If the petition fails to establish that a judgment is void, the habeas corpus court is not obligated to hold a hearing on the allegations. *Hogan v. Mills*, 168 S.W.3d 753, 755 (Tenn. 2005).

Tennessee Code Annotated section 29-21-105 states that a petition for habeas corpus relief "should be made to the court or judge most convenient in point of distance to the applicant, unless a sufficient reason be given in the petition for not applying to such court or judge." Because the Defendant was incarcerated in Morgan County, he should have filed his petition in Morgan County, rather than in the Robertson County Circuit Court.

Moreover, the Defendant failed to comply with the formal requirements in his petition for writ of habeas corpus because he failed to attach his prior habeas corpus petitions to his current petition seeking relief. *See Gregory Eidson*, 2016 WL 4252360, at *1-2 (noting that the Defendant filed a petition on May 28, 2014, which was dismissed, and another petition on July 2, 2015). A petition must state "[t]hat it is first application for the writ, or, if a previous application has been made, a copy of the petition and proceedings thereon shall be produced, or satisfactory reasons be given for the failure so to do." T.C.A. § 29-21-107(b)(4). A petition for relief may be denied by a habeas corpus court where a petitioner fails to comply with the statutory procedural requirements. *Summers*, 212 S.W.3d at 260; *see Hickman v. State*, 153 S.W.3d 16, 21 (Tenn. 2004) (providing that the procedural requirements are mandatory and must be scrupulously followed); *Gary E. Aldridge v. State*, No. M2005-01861-CCA-R3-HC, 2006 WL 1132073, at *2 (Tenn. Crim. App. Apr. 28, 2006) (noting that the failure to follow the mandatory requirements of Tennessee Code Annotated section 29-21-107(b)(4) justifies dismissal of habeas corpus petition). Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 10 -